AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JONAS MIRAMONTES and | ) | Case No. |
| CARLOS ALBERTO ALVAREZ, | ) | 19-6573-SNOW |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ December 2, 2019 _____ in the county of _____ Broward _____ in the
_____ Southern _____ District of _____ Florida _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 846 and 841(b)(1)(A). | Conspiracy to Possess with Intent to Distribute Methamphetamine. |

This criminal complaint is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Gabriel Ortiz, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/3/19

_____
*Judge's signature*

City and state:        Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Gabriel A. Ortiz, being duly sworn, hereby depose and state:

1.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been a Special Agent since September 2009. I am assigned to the Fort Lauderdale Office in Broward County, Florida. As a Special Agent, I am responsible for investigating violations of federal law relating to immigration and customs enforcement. In my current assignment, I am also responsible for investigations involving the importation and distribution of controlled substances and the possession and concealment of such controlled substances. I have received specialized training in narcotic-related investigations. I have been involved in the execution and planning of narcotic-related arrests for over nine years. I have successfully completed the Criminal Investigator Training Program and ICE Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.

2.      I make this Affidavit in support of a criminal complaint charging Jonas MIRAMONTES and Carlos Alberto ALVAREZ with conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

3.      I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including others who have investigated this matter and/or have personal knowledge of the facts herein. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter. However, no information known to me that would tend to negate probable cause has been withheld from this Affidavit.

4.      In or around December 2019, HSI and the Broward Sherriff's Office ("BSO")

received information from a Confidential Source ("CS") regarding an individual known to the CS as "Jose" who was believed to have ties to Drug Trafficking Organizations in the United States and Mexico. The CS and Jose discussed a deal in which the CS would purchase of between 20-30 pounds of methamphetamine at a price of $8,000 per pound. Through Jose, the CS was introduced to an unidentified male ("UM") who acted as the source of supply of the aforementioned deal.

5.    On December 1, 2019, a BSO undercover agent ("UC"), acting on behalf of the CS, communicated with the UM regarding the aforementioned deal. During the conversation, the UC told the UM that he/she was currently out of town but would call the UM the next day to discuss the deal.

6.    On December 2, 2019, the UM informed the UC that he had people in possession of the methamphetamine in South Florida who were ready to complete the deal. The UM informed the UC that he himself would not be there but would instead manage the deal over the phone. Later that day the UC texted the UM the address of a Starbucks in Broward County where he/she could meet with the people working with the UM. The UM informed the UC that his associates could be there in 30 minutes. On the way to the Starbucks, the UC received a call from the UM, who informed the UC that the person with the methamphetamine was driving a silver Camaro, and that there would be another person present at the deal whose job was to receive the purchase money from the UC.

7.    On December 2, 2019, at approximately 5 p.m., the UC arrived at the Starbucks parking lot and met with two individuals, later identified as Jonas MIRAMONTES and Carlos Alberto ALVAREZ. MIRAMONTES was driving a silver Camaro and ALVAREZ was driving a white Audi. Other law enforcement officers were monitoring and recording the meeting. The UC asked MIRAMONTES if everything was ready to go and MIRAMONTES replied yes.

2

MIRAMONTES pointed to the Audi and informed the UC that it was going with them.   Shortly thereafter, MIRAMONTES and ALVAREZ followed the UC to an undercover location, which other law enforcement officers were monitoring and recording.

8.     At the undercover location, MIRAMONTES exited the Camaro and retrieved a cardboard box from the trunk.  MIRAMONTES and the UC then proceeded to a smaller room inside the undercover location while ALVAREZ remained inside the Audi. Inside the room, the UC removed zip lock bags containing a clear crystal-rock like substance from the box and proceeded to weigh each one.  In total, MIRAMONTES had brought 22 bags with an approximate weight of 22 pounds.  The substance later field tested positive for the presence of methamphetamine.

9.     After weighing the bags and placing them on a table, the UC advised MIRAMONTES that he was instructed to pay the other person (ALVAREZ).  The UC left the room, approached ALVAREZ, and advised him to join MIRAMONTES in the smaller room, in which the methamphetamine was openly displayed on a table.  ALVAREZ entered the smaller room, but did not express any surprise at the presence of the methamphetamine.

10.     After ALVAREZ had entered the room, the UC informed ALVAREZ that he/she had been instructed to give ALVAREZ the money and ALVAREZ responded "ok."  Inside the room, the UC overheard MIRAMONTES and ALVAREZ discuss an aspect of the payment amongst themselves. Shortly thereafter, law enforcement intervened and arrested both MIRAMONTES and ALVAREZ.

11.     Law enforcement agents advised MIRAMONTES of his *Miranda* warnings.  He initially declined to speak to officers without an attorney present and questioning was stopped. After some time had passed, MIRAMONTES informed the officers that he wished to speak with them

without the presence of an attorney. MIRAMONTES was re-read his *Miranda* warnings and in a recorded statement, said, in substance, that he agreed to participate in the drug transaction in order to help pay for a family member's debt. MIRAMONTES told law enforcement that he received the box a few days earlier. On December 2, 2019, he was brought the box to a house as directed and met with ALVAREZ. There, ALVAREZ opened the box, and told MIRAMONTES to put the box in a closet while they both awaited further instructions. Thereafter, they were instructed to meet with the individual who turned out to be the UC to conduct the drug deal. MIRAMONTES said he expected ALVAREZ to receive all the purchase money and provide some of it to MIRAMONTES, out of which MIRAMONTES would keep some as his fee.

12.     ALVAREZ was read his *Miranda* warnings and agreed to speak with law enforcement personnel without the presence of an attorney. In a recorded statement, ALVAREZ stated, in substance, that a man in Mexico with whom he used to do business, asked him to rent a house in Fort Lauderdale for a few days so that a "deal" could take place, which he did. ALVAREZ understood his job would be to collect the money from the deal, which he believed would be $120,000. ALVAREZ expected to be paid but didn't know how much. Earlier in the day, MIRAMONTES arrived at the rented house with the box. After initially denying that he knew drugs would be involved, ALVAREZ eventually admitted that at least by the time he and ALVAREZ drove separately to the Starbucks, he thought there were drugs in MIRAMONTES' car.

13.     Based upon the foregoing, your affiant respectfully submits that there is probable cause to believe that on December 2, 2019, in Broward County, in the Southern District of Florida, MIRAMONTES and ALVAREZ did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, to possess with intent to distribute methamphetamine, in

4

violation of Title 21, United States Code, Section 846 and 841(b)(1)(A).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

GABRIEL A. ORTIZ, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Sworn to and subscribed before me this
___3rd___ day of December, 2019.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

5